IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE ESTATE OF ROBERT M. : 
CEDERLOFF :

v. : Civil Action No. DKC 08-2863

:

UNITED STATES OF AMERICA :

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tax penalty refund case is the Government's motion for summary judgment. (Paper 22). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I. Background**

This case is an action by Plaintiff, the Estate of Robert M. Cederloff ("the Estate"), for a refund of $13,952 in tax penalties. The Internal Revenue Service ("IRS") assessed these penalties after the Estate failed to file its estate tax return on time. The following facts are undisputed.

Robert M. Cederloff ("Decedent") died on August 15, 1999. Within three weeks of the Decedent's death, Garland Lowe was appointed as personal representative of the Estate. Mr. Lowe is an experienced attorney (and former IRS attorney) whose practice

includes estate law; as such, he was aware that he was required to file an estate tax return with the IRS within nine months of Decedent's death. (Paper 22, Ex. A, Lowe Dep., at 25-26).

On May 15, 2000, nine months after Decedent's death, Mr. Lowe filed IRS Form 4768, which requested an extension until August 15, 2000 to file the Estate's tax return. Mr. Lowe included a $30,000 payment with this request, representing the Estate's estimated tax liability. (Paper 1, Ex. 1). The IRS granted an extension, beyond that requested by Mr. Lowe, to November 15, 2000.[1] On January 30, 2001, well over two months after the extended filing deadline, Mr. Lowe requested another extension, until February 28, 2001. (*Id*. at Ex. 4). The IRS advised Mr. Lowe on February 13, 2001 that, by law, it could not grant an extension beyond six months, and instructed him to file the Estate's tax return "immediately." (*Id*. at Ex. 5). By letter dated October 4, 2001, Mr. Lowe informed the IRS that he was "unable to file the 706 Estate Tax Return" at that time, but "wish[ed] to make an additional payment on the tax." (*Id*. at Ex. 6). He enclosed a check for $50,000. (*Id*. at Ex. 6).

On October 31, 2001 – nearly one year beyond the final extension date permitted by law and well over eight months after

---

[1] Mr. Lowe subsequently requested an extension until October 31, 2000. Because the IRS had already granted an extension to November 15, it deemed this request to be superfluous.

the IRS directed him to file the return "immediately" – Mr. Lowe filed the Estate's tax return.  In the cover letter accompanying the return, Mr. Lowe requested an abatement of any penalties "for the following reasons":

> At the time of the decedent's death, although he was still domiciled in the State of Maryland, he had purchased a home in Las Vegas, Nevada titled in his name and his brother's name.  The decedent's intention was that his brother would reimburse him for his share of the cost.  After he took ill, he was present in Maryland and Nevada, but ultimately died at his daughter's home in Lake Oswego, Oregon.  His records and mail were scattered between his residence in Maryland, his office in Maryland, the home in Nevada and his daughter's home in Oregon.  In addition, the decedent had separated from his wife and taken up a separate residence, but they were not divorced at the time of his death.  She has predeceased him so that assets that were jointly held added to the confusion of ascertaining and locating various assets, including stocks, bonds, insurance policies and IRA accounts.  The decedent's income tax situation was extremely confusing and impossible to determine at the time the return was due.  To add to the confusion, the decedent's brother then made a claim for the entire residence in Nevada so that in addition to an ancillary administration, litigation had to be undertaken which resulted in the settlement that is indicated on the Schedule A of the [IRS Form] 706. . . .  The Orders from the State of Nevada's ruling were not received by the estate until the 3rd week in August, 2001. . . .
>
> In addition, when the return was due, your Personal Representative did not feel to any degree of certainty that all of the assets

> were accounted for and the certification required on the face of the 706 with your Personal Representative's signature could not be made. As a result, more assets were located and are, in fact, returned, resulting in the increase in tax over and above your Personal Representative's estimate at the time the payment was made in May, 2000.

(*Id.* at Ex. 7).

The IRS refused to abate the penalties. The Service concluded that the Estate owed $70,576 in taxes, $13,592.96 in penalties, and $5,801.71 in interest. (*Id.* at Ex. 8). After subtracting the $80,000 in payments already made by the Estate, the IRS determined that the Estate owed an additional $9,970.67. (*Id.*). On June 17, it sent a letter to Mr. Lowe requesting payment of that amount by July 8. Mr. Lowe responded by letter dated June 26, renewing his request that the penalty portion of this amount be waived. (*Id.* at Ex. 9). The IRS continued to demand payment, however, and after exhausting its administrative remedies the Estate remitted the sum of $10,560.02 in payment of the penalty, which the IRS accepted.

The Estate filed a complaint in this court on October 28, 2008, seeking recovery of the penalty. The Estate contends that (1) its stated reasons for the delay in filing the estate tax return established reasonable cause, and (2) the IRS' refusal to abate the penalty was arbitrary and capricious and in violation

4

of the Estate's constitutional right of equal protection. (Paper 1). On November 6, 2009, the Government filed the pending motion for summary judgment. (Paper 22).

**II. Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."

*Id*.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.  "A mere scintilla of proof, however, will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson*, 477 U.S. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50. (citations omitted).

**III. Analysis**

United States district courts, along with the United States Court of Federal Claims, have original jurisdiction over tax refund suits such as this case.  *See* 28 U.S.C § 1346(a)(1); *Dang v. Comm'r*, 259 F.3d 204, 208 (4th Cir. 2001).  The court undertakes a *de novo* review of the tax decision, as "a tax refund suit is not an appellate review of the administrative decision that was made by the IRS; instead, the Court must make an independent decision as to whether the taxpayer is due a refund."  *Wells Fargo & Co. and Subsidiaries v. United States*,

91 Fed.Cl. 35, 75 (2010) (quotations omitted); *see also Lewis v. Reynolds*, 284 U.S. 281, 283 (1932); *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2$^d$ Cir. 1991). The IRS' penalty assessment is presumptively correct; the taxpayer bears the burden of establishing by a preponderance of the evidence that the assessment was wrong. *Faulconer v. Comm'r*, 748 F.2d 890, 893 (4th Cir. 1984); *see also Apollo Fuel Oil v. United States*, 195 F.3d 74, 76 (2$^d$ Cir. 1999).

The Internal Revenue Code ("IRC") and its applicable regulations contain strict deadlines related to the estate tax. In particular, an estate tax return must be filed and estate taxes must be paid within nine months of a decedent's death. *See* 26 U.S.C. §§ 6075(a), 6018(a); 26 C.F.R. §§ 20.6075-1, 20.6151-1(a). The deadline for filing the return may be automatically extended if the taxpayer files a Form 4768 request for extension of time on or before the due date for the return. *See* 26 C.F.R. § 20.6081-1. No further extension is permitted unless the estate's executor is abroad. *Id.* § 20.6081-1(b).

In this case, there is no dispute that the Estate's return was *prima facie* untimely. Mr. Lowe properly filed a Form 4768 within the initial deadline and that deadline was appropriately extended for six months. Then, he waited. Only after the

deadline expired and almost a year passed did he file the required return on behalf of the Estate.

When an estate fails to file a timely tax return, the IRC imposes mandatory penalties.  26 U.S.C. § 6651(a).  The Code provides an exception to the penalties that the Estate now attempts to invoke in an effort to justify its belated return. That exception excuses tardiness when it "is due to reasonable cause and not due to willful neglect."  26 U.S.C. §§ 6651(a)(1), (a)(2).  This statutory escape hatch, however, is not an easy way out of liability.  As the Supreme Court has explained, "the taxpayer bears the *heavy burden* of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable care.'  *United States v. Boyle*, 469 U.S. 241, 245 (1985) (emphasis added) (quoting 26 U.S.C. § 6651(a)(1)).

The two elements "ha[ve] become clear over the near-70 years of their presence in the statutes."  *Id.*  Willful neglect is a "conscious, intentional failure or reckless indifference." *Id.*  On the other hand, reasonable cause exists where "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time."  26 C.F.R. §§ 301.6651-1(c)(1).  For example, the United States Court of Appeals for the Second Circuit indicated

8

reasonable cause may arise from "unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax advisor, lawyer, or accountant that it was not necessary to file a return." *Marrin v. Comm'r*, 147 F.3d 147, 152 (2$^d$ Cir. 1998) (citing *McMahan v. Comm'r*, 114 F.3d 366, 369 (2$^d$ Cir. 1997)). Each of these examples reflects a common theme: only external circumstances leading to delay – in other words, circumstances beyond the taxpayer's control – excuse an untimely filing. *Boyle*, 469 U.S. at 249.

Here, the Estate cannot establish reasonable cause for its late return. Mr. Lowe's belief that he could not properly value the Estate before the deadline, for instance, does not constitute reasonable cause for the delay. Estates can certainly take time to settle, particularly when the winding up of affairs spurs collateral litigation. Litigation and the like can create uncertainty that makes estate administration difficult. Nevertheless, the applicable Treasury regulations account for this uncertainty by stating that "[a] return *as complete as possible* must be filed before the expiration of the extension period." 26 C.F.R. § 20.6081-1(d) (emphasis added); *see also Zeier v. IRS*, 80 F.3d 1360, 1363 (9th Cir. 1996) ("In estate tax, if a taxpayer cannot make precise determinations in

valuing the estate, the bottom-line estimated values serve as the basis for calculating the estate tax."). Another related statute also reflects that estate tax returns sometimes reflect incomplete information. *See* 26 U.S.C. § 6018(b)(4) ("If the executor is unable to make a complete return as to any property acquired from or passing from the decedent . . ."). Thus, it was well within the Estate's power and control to file the type of income tax return required by law. The fact that Mr. Lowe actually estimated and paid two tax payments suggests he had enough information to file an estimated return. Although the Estate makes much of the fact that an estate tax return cannot be amended after the extended deadline expires (arguably foreclosing an estimated return), the Treasury regulations do provide that a taxpayer may file supplemental information affecting the tax liability after the expiration of the extension period. *See* 26 C.F.R. § 20.6081-1(d) ("The return cannot be amended after the expiration of the extension period although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax on the return.").

Thus, the Estate could have and should have prepared its return based on the best information available.[2] Incomplete information or estate-related litigation will not shield the Estate from penalty. *See Ferguson v. Comm'r*, 568 F.3d 498, 501 (5th Cir. 2009) (affirming lower court's decision that "unavailability (to the taxpayer) of information or records does not necessarily establish reasonable cause for failure to file timely a tax return") (quotations omitted); *In re Craddock*, 149 F.3d 1249, 1255 (10th Cir. 1998) (same); *Morgan v. Comm'r*, 807 F.2d 81, 83 (6th Cir. 1986) (involvement in litigation is not reasonable cause); *Duttenhofer's Estate v. Comm'r*, 410 F.2d 302, 302 (6th Cir. 1969) (affirming decision that "litigation in which the estate was involved" did not provide reasonable cause for delay). Similarly, the unique complexities created by Decedent's separation from his wife did not justify the nearly one-year delay. *See Estate of Ridenour v. United States*, 468 F.Supp.2d 941, 952 (S.D.Ohio 2006) (finding complexity does not constitute reasonable cause); *St. Clair v. United States*, 880 F.Supp. 669, 672 (D.Minn. 1993) (same); *cf. United States v. Ballantine*, 532 F.Supp. 213, 216 (D.Md. 1981) ("Being busy . . . do[es] not escuse the filing of a tax return."). The

---

[2] If Mr. Lowe was confused about how to handle an estate tax return with incomplete information, one would have expected him to contact the IRS for help. He instead chose to ignore the IRS' explicit instructions and wait for eight months to pass.

11

unfortunate truth is that estate administration frequently involves complex issues and attendant delays. *See, e.g.*, *In re Estate of Fields*, 219 P.3d 995, 1013-14 (Alaska 2009) (describing delay in estate settlement of more than 12 years).

The Estate suggests it exercised "ordinary business prudence and care" because it advanced the taxes that it believed to be due. (Paper 31, at 8). To use Mr. Lowe's words, one might term this idea a "no harm, no foul" argument. (Paper 22-3, Ex. B, Lowe Dep., at 10). The law clearly does not permit such an excuse, as the statute contains separate penalties for failure to pay taxes and failure to file a return. *Compare* 26 U.S.C. § 6651(a)(1) (penalties for failure to file a return), *with* 26 U.S.C. § 6651(a)(2) (penalties for failure to pay tax). Prompt payment *and reporting* of taxes are *both* required; *both* are critical elements of our self-assessment tax system. *See Boyle,* 469 U.S. at 249-50 ("The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. . . . [Our Government] should not have to assume the burden of unnecessary ad hoc determinations.").

The Estate also maintains that the jurat at the end of the estate tax return prevented Mr. Lowe from filing that return.

(Paper 31, at 10-11).  The jurat is a statement attached at the end of the return wherein the preparer swears, under penalty of perjury and "to the best of [the preparer's] knowledge and belief," that the return is "true, correct, and complete."  Mr. Lowe could have filed an estimated return and nevertheless signed the jurat in good conscience, as the jurat concerns only the preparer's then-present "knowledge and belief."  Most importantly, as explained above, the law itself expressly contemplates estimated returns.  And practically speaking, this is something of a moot point, as even Mr. Lowe now admits that declining to file a return was perhaps the worst of all available options:

> I've thought about what I would do over again not to end up in this situation.  What if I had crossed that out, said, I'm not going to sign that – or I would say, I'll send in the return, but I won't sign it. . . . In retrospect, I could have signed it. If I had to do over again, I might have filed a return. . . . I could have filed a return with an accompanying letter that said, that's not true.

(Paper 22-3, Ex. B, Lowe Dep., at 9-10).

In passing, the Estate hints that its delay might have been justified by its reliance on the advice of a competent tax advisor, namely Mr. Lowe.[3]  (Paper 31, at 7 ("[T]he case before

---

[3] Mr. Lowe did not raise this issue in his letters to the IRS seeking abatement of penalties.  (Paper 1, Exs. 7 & 9).

13

the Court may well fit the reliance example.")). "Reliance upon the mistaken advice of a professional man, believed to be an expert, may be reasonable cause for delay in filing." *Bryan v. Comm'r*, 281 F.2d 238, 244 (4th Cir. 1960); *see also Neese v. IRS*, 305 B.R. 645, 648 (D.Md. 2004) ("[W]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice.") (quoting *Boyle*, 469 U.S. at 250-51). This "reliance defense" does not apply here, where there is no allegation Mr. Lowe ever advised the Estate that the deadline did not apply or was somehow excused. As the Estate concedes, it was aware of the relevant deadlines "[f]rom the very beginning." (Paper 31, at 8). Nevertheless, it delayed in filing because of an apparent belief that those deadlines did not apply, even after the IRS specifically instructed the Estate to file "immediately." The Estate should have anticipated that,

---

"[A] taxpayer may not maintain a suit for refund except upon the grounds specified in a claim previously and properly filed in accordance with the regulations." *Safe Deposit & Trust Co. of Baltimore v. Magruder*, 65 F.Supp. 783, 785 (D.Md. 1946); *see also Muskat v. United States*, 554 F.3d 183, 194 (1st Cir. 2009) (stating taxpayers are barred "from presenting claims in a tax refund suit that substantially vary the legal theories and factual bases set forth in the tax refund claim presented to the IRS") (quotations omitted). Because the Government does not argue this doctrine of variance, the court will nevertheless consider the Estate's reliance argument.

no matter what advice Mr. Lowe gave them, penalties would result from such an untimely filing. As the Supreme Court explained:

> [O]ne does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due. In short, tax returns imply deadlines. Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute. . . . It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under § 6651(a)(1).

*Boyle*, 469 U.S. 251-52. In short, the Estate cannot escape penalty by relying on the Mr. Lowe's unreasonable advice to ignore the statutory deadlines.

The Estate also overlooks the fact that Mr. Lowe is the personal representative of the Estate; he is not an outside advisor and he did not rely on the experience of any third party. Therefore, he cannot invoke his reliance on his own mistaken belief to excuse his failure to file. *Cf. Stobie Creek Inv. LLC v. United States*, 608 F.3d 1366, 1382 (Fed. Cir. 2010) (noting, in context of accuracy-related penalties, that reliance supports reasonable cause only if it is based "on the advice of a competent and *independent* professional advisor") (emphasis added). If the court were to adopt the Estate's view, the

15

bizarre consequence would be that any taxpayer who was also a tax professional could delay in filing his/her return in reliance on his/her own professional advice.

Finally, Plaintiff argues that the IRS' refusal to forgive penalties for the late filing of the estate tax return while "rescinding" the penalties assessed on the late filing of Decedent's individual income tax return is arbitrary and capricious and violates the Estate's constitutional rights of equal protection. (Paper 31, at 12). The court observes at the outset that Plaintiff has not presented any evidence that the penalties were actually abated on Decedent's individual income tax return. More importantly, however, Plaintiff cites no authority for this argument and the court cannot perceive any reason to accept it. *See, e.g., Christian v. United States*, No. MJG-06-1437, 2008 WL 5989879, at *5 (D.Md. Jan. 9, 2008) (explaining why various constitutional claims are not viable in tax refund suit). As the court has already explained, "[t]he reasoning of the IRS in assessing penalties in Plaintiff's case is irrelevant to the outcome of this proceeding; clearly, its reasoning in granting relief in other cases is of no moment." *Estate of Cederloff v. United States*, No. DKC 08-2863, 2010 WL 157512, *2 (D.Md. Jan. 13, 2010). Regardless of the reasons for past IRS actions, the burden remains on Plaintiff to establish

that the IRS imposed the penalty erroneously. Plaintiff has failed to carry that burden.

## III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
